IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOEL ALLEN BLEVINS, | ) |
| Petitioner, | ) |
| v. | ) Case No. 16-CV-436-GKF-PJC |
| JIM FARRIS, Warden,[1] | ) |
| Respondent. | ) |

## OPINION AND ORDER

On June 28, 2016, Petitioner, a state inmate appearing pro se, filed a petition for writ of habeas corpus (Dkt. # 1) in the United States District Court for the Eastern District of Oklahoma. On July 5, 2016, the case was transferred to this Court (Dkt. # 7). In response to the petition, Respondent filed a "motion to dismiss petition for habeas corpus for failure to timely file petition" (Dkt. # 10), along with a supporting brief (Dkt. # 11). Petitioner filed a "combined motion to suppliment [sic] origional [sic] application and brief/response to motion to dismiss" (Dkt. ## 15, 16). For the reasons discussed below, Petitioner's motion to supplement shall be granted, the motion to dismiss shall be granted, and the petition shall be dismissed with prejudice as time barred.

### BACKGROUND

Petitioner challenges his convictions and sentences entered in Ottawa County District Court, Case Nos. CF-2003-386B and CF-2003-540. See Dkt. # 1 at 1. The record reflects that on

---

[1] Petitioner is in custody at Jess Dunn Correctional Center where Jim Farris is Warden. Pursuant to Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*, the proper party respondent in this matter Jim Farris, Warden. Therefore, Jim Farris, Warden, is substituted in place of Arthur Lightle, Warden, as party respondent. The Clerk of Court shall note the substitution on the record.

December 16, 2003, in Case No. CF-2003-386B, Petitioner entered pleas of guilty to Manufacture of CDS within 2000 ft of School (Count 1), Possession of CDS within 2000 ft of School or Park (Count 2), and Possession of Paraphernalia (Count 3).[2] See Dkt. # 11-14. The trial judge accepted Petitioner's pleas and sentenced him that day to twenty (20) years imprisonment, with all but the first ten (10) years suspended, and a $50,000 fine with $49,000 suspended (Count 1); twenty (20) years imprisonment, with all but the first ten (10) years suspended, and a $1,000 fine (Count 2); and a $100 fine (Count 3). See Dkt. # 11-19 at 13-14. The sentences were ordered to be served concurrently. Id. On January 9, 2004, Petitioner filed a motion to withdraw his pleas. See Dkt. # 11-14 at 5. By order filed January 15, 2004, the motion was denied as untimely. Id. Petitioner did not perfect a certiorari appeal to the Oklahoma Court of Criminal Appeals (OCCA). See Dkt. # 11-2 at 1 n.1. Attorney Terry Weber represented Petitioner during plea proceedings. See Dkt. # 11-19 at 2.

On April 7, 2004, in Case No. CF-2003-540, Petitioner entered a plea of nolo contendere to Child Sexual Abuse.[3] See Dkt. # 11-15 at 5. The trial judge accepted Petitioner's plea and sentenced him that day to fifteen (15) years imprisonment with all but the first five (5) years suspended, to be served concurrently with the sentences entered in Case No. CF-2003-386B. See Dkt. # 11-20 at 12. During the plea proceeding, the trial judge carefully explained the provisions of

---

[2]In establishing a factual basis for his guilty pleas in CF-2003-386B, Petitioner admitted that, as to Count 1, he made methamphetamine at an address located approximately 716 feet from Northeast A & M College, Miami, Oklahoma; as to Count 2, Petitioner admitted that he possessed methamphetamine at an address located 110 feet from Roosevelt Elementary School, Miami, Oklahoma; and as to Count 3, Petitioner admitted that he possessed scales and glassware for use in using the drugs. See Dkt. # 11-19 at 10-11.

[3]In establishing a factual basis for his nolo contendere plea in Case No. CF-2003-540, Petitioner admitted that he showed pornographic movies to his six (6) year old daughter, then had her remove her clothes, and "he attempted to have sexual intercourse with her, but without full penetration." See Dkt. # 11-20 at 10-11.

the Oklahoma Sex Offenders Registration Act (OSORA). Id. at 15-18. Petitioner averred that he understood the registration requirements. Id. Petitioner did not file a motion to withdraw his plea and did not perfect a certiorari appeal in the OCCA. See Dkt. ## 11-15, 11-2 at 1 n.1. Attorney Terry Weber represented Petitioner during plea proceedings. See Dkt. # 11-20 at 2.

On October 4, 2004, Petitioner filed motions for judicial review in both cases, and the motions were denied on October 5, 2004. See Dkt. # 11-14 at 6; Dkt. # 11-15 at 6.

On July 7, 2006, in Case No. CF-2003-386B, Petitioner filed an application for post-conviction relief (Dkt. # 11-9). By Order filed August 18, 2006 (Dkt. # 11-10), the state district judge denied the application for post-conviction relief finding Petitioner's claims to be procedurally barred. Petitioner appealed. Id. at 4-5. On December 28, 2006, in Case No. PC-2006-981 (Dkt. # 11-11), the OCCA imposed a procedural bar and affirmed the denial of post-conviction relief. Petitioner did not file an application for post-conviction relief in Case No. CF-2003-540 until February 10, 2014. See Dkt. # 11-3.

On August 3, 2011, the State filed applications to revoke suspended sentences in both cases. See Dkt. # 11-14 at 8; Dkt. # 11-15 at 7. On October 5, 2011, after having found Petitioner to be competent on September 26, 2011, see Dkt. # 11-14 at 10; Dkt. # 11-15 at 9, the state district judge granted the applications to revoke and revoked Petitioner's suspended sentences in full. See Dkt. # 11-14 at 10-11; Dkt. # 11-15 at 9. Petitioner appealed the revocations to the OCCA. On May 1, 2013, in Case No. RE-2011-914, the OCCA affirmed the orders revoking Petitioner's suspended sentences. See Dkt. # 11 at 3; see also Dkt. # 11-4 at 2; Dkt. # 11-7 at 2.

After the OCCA affirmed the revocation orders in 2013, Petitioner filed numerous collateral challenges to his convictions. See Dkt. ## 11-3, 11-4, 11-5, 11-6, 11-7, 11-8 (post-conviction proceedings commenced on February 10, 2014, and terminated with OCCA's order declining

3

jurisdiction, filed June 4, 2014, in Case No. PC-2014-460); Dkt. ## 11-12, 11-3 (collateral challenges filed in district court on February 18, 2015, and terminated with OCCA's order, filed October 5, 2015, in Case No. PC-2015-307, reversing and remanding to district court with instructions to enter "proper orders" disposing of Petitioner's motions); Dkt. ## 11-1, 11-2 (post-conviction appeal from district court's order filed December 11, 2015, and terminated with OCCA's order, filed April 22, 2016, in Case No. PC-2016-12, affirming district court's dismissal of post-conviction proceedings). Petitioner's efforts to obtain collateral relief from his convictions and sentences have been unsuccessful.

On June 28, 2016, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1). Petitioner raises twelve (12) grounds of error, as follows:

  Ground 1:  Petitioner was not accorded a competency hearing.

  Ground 2:  Retro-active application of and not informing Petitioner of the Oklahoma Sex Offender Registration Act or his true range of punishment prior to accepting his plea violated due process, double jeopardy, ex post facto and violates the Bill of Attainder Clause, makig [sic] his plea truly involunary [sic] and unintelligent.

  Ground 3:  Petitioner's counsel was ineffective.

  Ground 4:  Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

  Ground 5:  Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

  Ground 6:  Conviction obtained by a violation of the protection against double jeopardy.

  Ground 7:  Accumulative Error's [sic].

  Ground 8:  Abuse of discretion based on prejudice of the Court.

>   Ground 9:      Challenge to the Constitutionality of OSORA the Sex Offender Registration Act, 57 O.S., § 581 et. seq.
>
>   Ground 10:     Petitioner challenges the Constitutionality of the Plea Bargaining Doctrine as applied by Oklahoma Law.
>
>   Ground 11:     Actual Innocence.
>
>   Ground 12:     SORNA overreaches the government's spending limits and is unconstitutional.

Id. As stated above, Respondent moves to dismiss the petition as time barred. See Dkt. ## 10, 11. In response, Petitioner has filed a combined motion to supplement his petition (Dkt. # 15) and response to the motion to dismiss (Dkt. # 16). As a preliminary matter, the Court shall grant Petitioner's motion to supplement and shall consider the supplemental information alleged in Petitioner's response in resolving issue of timeliness. In his response, Petitioner states that he abandons Grounds 8, 9, 10, 11, and 12. Id. at 2. Because Petitioner has abandoned Grounds 8-12, the Court will analyze the timeliness of Grounds 1-7.

## *ANALYSIS*

The Antiterrorism and Effective Death Penalty Act (AEDPA), enacted April 24, 1996, established a one-year limitations period for habeas corpus petitions as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
> 
>   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>   
>   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
>   
>   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

    recognized by the Supreme Court and made retroactively applicable
to cases on collateral review; or
    (D) the date on which the factual predicate of the claim or
claims presented could have been discovered through the exercise of
due diligence.
   (2) The time during which a properly filed application for State post-
conviction or other collateral review with respect to the pertinent judgment or claim
is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). In general, the limitations period begins to run from the date on which a prisoner's conviction becomes final, but may also begin to run under the terms of § 2244(d)(1)(B), (C), and (D). Also, the limitations period is tolled or suspended during the pendency of a state application for post-conviction relief properly filed during the limitations period. 28 U.S.C. § 2244(d)(2).

**A. Application of § 2244(d)(1)(A)**

  Under 28 U.S.C. § 2244(d)(1)(A), this petition is time barred. In Grounds 1 and 3-7 Petitioner challenges his convictions and sentences entered on his pleas of guilty and nolo contendere in Ottawa County District Court, Case Nos. CF-2003-386B and CF-2003-540. None of those claims challenge the revocation of his suspended sentences. Because Petitioner failed to file a timely motion to withdraw his guilty pleas in Ottawa County District Court, Case No. CF-2003-386B, his convictions in that case became final on December 26, 2003, ten (10) days after pronouncement of his Judgment and Sentence. See Rule 4.2, Rules of the Oklahoma Court of Criminal Appeals. When he failed to file a motion to withdraw his guilty plea by December 26, 2003, his one-year federal limitations period began to run the next day, December 27, 2003. See Harris v. Dinwiddie, 642 F.3d 902, 907 n.6 (10th Cir. 2011). Absent a tolling event, a federal petition for writ of habeas corpus

6

filed after December 27, 2004, would be untimely. See U.S. v. Hurst, 322 F.3d 1256 (10th Cir. 2003) (applying Fed. R. Civ. P. 6(a) to calculate AEDPA deadline).

Similarly, Petitioner's conviction in Ottawa County District Court, Case No. CF-2003-540, became final on Monday, April 19, 2004, when Petitioner failed to file a motion to withdraw his nolo contendere plea within ten (10) days of the trial judge's pronouncement of Judgment and Sentence on April 7, 2004. Petitioner's one-year federal limitations period began to run the next day, April 20, 2004, and absent a tolling event, a federal petition for writ of habeas corpus filed after April 20, 2005, would be untimely.

In his petition, filed on June 28, 2016, more than eleven (11) years beyond the deadlines, Petitioner attempts to overcome the time bar resulting from application of § 2244(d)(1)(A) by arguing that his convictions either did not become final until 2016 or are not yet final. See Dkt. # 1 at 28-29. Petitioner claims that his convictions are not final because (1) post-conviction proceedings denying a direct appeal out of time did not conclude until April 22, 2016, (2) the statute of limitations cannot apply to an "ongoing issue under Contract Law," (3) there is "no finality to a sentence that was illegally imposed," and (4) "a decision produced by fraud . . . never becomes final." See id. However, none of the considerations identified by Petitioner affects the finality of a conviction. Instead, as defined within § 2244(d)(1)(A), a conviction becomes final upon "conclusion of direct review or the expiration of the time for seeking such review." As discussed above, Petitioner's convictions became final upon "the expiration of the time for seeking" direct review by the OCCA, i.e., when he failed to file timely motions to withdraw his pleas. None of Petitioner's arguments alters the fact that his convictions in Case No. CF-2003-386B became final on December 26, 2003, and his conviction in Case No. CF-2003-540 became final on April 19, 2004.

As a result, the petition filed June 28, 2016, is time barred under § 2244(d)(1)(A) unless Petitioner demonstrates entitlement to tolling.

**B. Application of § 2244(d)(1)(C) and/or (D)**

In his response to the motion to dismiss, Petitioner asserts that "he was unable to discover the factual predicate of his claims through the exercise of due diligence until some later date after his conviction and sentence became final under 28 U.S.C. § 2244(d)(1)(A)." See Dkt. # 16 at 8. Petitioner argues that the factual basis for his Ground 2 claims challenging the constitutionality of the application of the OSORA did not exist when he entered his plea of nolo contendere in Case No. CF-2003-540. Petitioner also alleges that a "new law," Starkey v. Okla. Dep't of Corrs., 305 P.3d 1004 (Okla. 2013) (finding that certain provisions of OSORA violate ex post facto clause of Oklahoma Constitution),[4] affects the limitations period applicable to his Ground 2 claims. In addition, liberally construing Petitioner's pro se claims, it is possible that Petitioner was unaware of the factual basis of his claims in Grounds 3 and 4 based on application of Oklahoma's sentence administration rules when he entered his pleas of guilty and nolo contendere. However, to the extent Petitioner invokes the provisions of 28 U.S.C. § 2244(d)(1)(C) or (D) to reset the limitations period applicable to Grounds 2, 3, and 4, the Court nonetheless finds the claims to be time barred.

**1. Retroactive application of amendments to OSORA (Ground 2)**

In Ground 2, Petitioner alleges, in pertinent part, that:

---

[4] In a habeas corpus action, the Court's review is limited to considering whether the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2254(a). In Shaw v. Patton, 823 F.3d 556 (10th Cir. 2016), the Tenth Circuit Court of Appeals found that retroactive application of reporting, residency, and loitering provisions of OSORA do not constitute punishment and enforcement of these restrictions does not violate the U.S. Constitution.

>the Oklahoma[a] Sex Offender[s] Act (hereinafter OSORA) all of its many provisions are separate and distinct punishments that were added to his sentence after court accepted his plea, and years later when he was released to the suspended portion of his sentence at which time he became subjected to all of the provision[s] of OSORA without due process or a hearing to reduce the length of the registration period . . . . These provisions were applied to his person from 2008 and he was subjecte[d] to extensive portions of this act upon his release to the suspended portion of his sentence.
>
>    . . . .
>
>OSORA's punitive effect is a new intervening change in law decided on June 25, 2013, in <u>Starkey v. ODOC</u> and could not have been brought forth on direct appeal. Petitioner did not become aware of the <u>Starkey</u> case until approximately Feb. 10, 2013. Petitioner exercised due diligence in this matter by filing a "Supplemental Application for Post-Conviction Relief/Appeal Out of Time."

(Dkt. # 1 at 5-6).

As stated above, the one year limitations period may begin to run on "the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). Petitioner characterizes the decision in <u>Starkey</u> as a "new intervening change in law" and argues that his claim based on OSORA is timely. However, <u>Starkey</u> was decided by the Oklahoma Supreme Court, not the United States

Supreme Court.[5]  For that reason, the issuance of Starkey does not serve to trigger the commencement of a new one year limitations period under § 2244(d)(1)(C).

The one year limitations period may also begin to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Based on allegations in the petition, Petitioner became aware of the "factual predicate" of his Ground 2 claims in 2008 when he was released from custody to serve the suspended portions of his sentences. See Dkt. # 1 at 8 (alleging that "in 2008 the registration and classification of the Petitioner was significantly enlarged without notification, Due Process or any right to a fair hearing"). Because the date on which the factual predicate of Petitioner's Ground 2 claims could have been discovered through the exercise of due diligence was in 2008, Petitioner's habeas deadline expired one year later, in 2009. However, Petitioner did not pursue a claim challenging the retroactive application of OSORA amendments until he filed an application for post-conviction relief on February 10, 2014, see Dkt. # 11-3 at 5, or at least (5) years after he could have learned the factual predicate of his claim. That amount of time is not consistent with "due diligence."

---

[5] In Starkey, the Oklahoma Supreme Court evaluated the statute's constitutionality under the Oklahoma Constitution, not the U.S. Constitution. Starkey, 305 P.3d at 1030-31. The Starkey court explained that "[e]ffective November 1, 2007, SORA was amended to require the Department of Corrections or a court to assign a numeric risk level to a person 'who will be subject to the provisions of the Sex Offenders Registration Act.' Title 57 O.S. Supp.2007, §§ 582.1-582.2." Id. at 1010. Under Okla. Stat. tit. 57, § 582.5 (Supp. 2007), three risk levels were established. Id. In addition, "[s]ection 583 was also amended to set the registration period for the 3 levels. It provided 'a person [who] has been convicted or received probation within the State of Oklahoma . . . shall be required to register' for 15 years if the person is a level 1 offender, 25 years for a level 2 offender, and for life is a person is a level 3 offender or classified as a habitual or aggravated sex offender." Id. In state court, Petitioner alleged that the Oklahoma Department of Corrections has classified him as an "aggravated offender" requiring lifetime registration. See Dkt. # 11-2 at 6.

Petitioner also argues that he was unaware of his claim challenging OSORA until the issuance of Starkey. While it is possible that Petitioner did not understand the legal significance of all the facts until issuance of the Starkey opinion, the limitations period begins to run under § 2244(d)(1)(D) when the petitioner knows of the facts giving rise to the habeas claim; it is not required that he understand the legal significance of those facts. Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2001) ("[T]he trigger in § 2244(d)(1)(D) is . . . discovery of the claim's 'factual predicate,' not recognition of the facts' legal significance"); see also Preston v. Gibson, 234 F.3d 1118, 1120 (10th Cir. 2000). Based on Petitioner's averments, the limitations period applicable to his Ground 2 claims began to run in 2008, when he could have discovered the factual predicate of his claims through the exercise of due diligence, not when he claims to have learned of the legal significance of the facts several years later when Starkey was issued. Therefore, Petitioner's Ground 2 claims are time barred unless Petitioner is entitled to tolling.

**2. Failure to advise of the 85% and 50% Rules (Grounds 3 and 4)**

In Grounds 3 and 4, Petitioner alleges that his pleas of guilty entered on December 16, 2003, in Case No. CF-2003-386B, on the charges of Manufacturing a Controlled Dangerous Substance within 2000 Feet of a School (Count 1) and Possession of a Controlled Dangerous Substance within 2000 Feet of a School (Count 2), were involuntary and unknowing because neither his attorney nor the trial judge advised him of the service administration rules applicable to his sentences.[6] Similarly, Petitioner alleges that his plea of nolo contendere entered on April 7, 2004, in Case No. CF-2003-

---

[6]For a first offense, a prisoner convicted of Manufacturing Methamphetamine Within 2,000 Feet of a School and/or Possession of a Controlled Dangerous Substance Within 2,000 Feet of a School is required to "serve a minimum of fifty percent (50%) of the sentence received prior to becoming eligible for state correctional institution earned credits toward the completion of the sentence." See Okla. Stat. tit. 63, §§ 2-401(F)(1), 2-402(C)(1).

540, on the charge of Child Sexual Abuse, was involuntary and unknowing because neither his attorney nor the trial judge advised him of the applicability of the 85% Rule to the service of his sentence.[7] See Dkt. # 1 at 7-12. Petitioner did not raise his claims based on these rules in state court until February 10, 2014, when he filed his applications for post-conviction relief. See Dkt. # 11-3 at 9; Dkt. # 11-6 at 10.

The transcripts from the change of plea hearings demonstrate that the applicability of the 50% and 85% Rules was not discussed. See Dkt. ## 11-19, 11-20. However, the Oklahoma Department of Corrections (DOC) Case Management policies require case managers to develop, upon an inmate's reception into DOC custody, an individualized accountability plan using an "Adjustment Review" form. See OP-060101, OP-060203, viewed at www.ok.gov/doc/. The form contains information concerning an inmate's sentence, including whether it is to be administered under the 85% Rule. See DOC 060203A, viewed at www.ok.gov/doc/. Thus, Petitioner became aware, or could have become aware through the exercise of due diligence, that his sentences fell under the sentence administration rules when he met with his case manager to review the "Adjustment Review" form, shortly after he was received into DOC custody in 2004. Therefore, under 28 U.S.C. § 2244(d)(1)(D), the one-year limitations period applicable to any claim based on the 50% and 85% Rules expired in 2005, or well before Petitioner first presented his claims to the state courts on

---

[7]On March 1, 2000, legislation enacting Oklahoma's 85% Rule went into effect. Anderson v. State, 130 P.3d 273, 278 (Okla. Crim. App. 2006). Under the 85% Rule, a prisoner convicted of a felony listed in Okla. Stat. tit. 21, § 13.1, shall not be eligible for either parole consideration or earned sentence credits prior to serving 85% of the sentence imposed. See Okla. Stat. tit. 21, § 12.1. Petitioner is advised that counsel's failure to inform a defendant of the collateral consequences of a guilty plea, such as the 85% Rule, does not render the plea involuntary or implicate the Sixth Amendment. See Chrisman v. Mullins, 213 F. App'x 683, 687 (10th Cir. 2007) (unpublished).

February 10, 2014. Therefore, Petitioner's Grounds 3 and 4 based on the 50% and 85% Rule are time barred unless Petitioner is entitled to tolling.

**C. Statutory tolling**

The running of the limitations period is tolled or suspended during the pendency of any post-conviction or other collateral proceeding with respect to the pertinent judgment or claim properly filed during the limitations period. 28 U.S.C. § 2244(d)(2); Hoggro v. Boone, 150 F.3d 1223, 1226 (10th Cir. 1998). Under § 2244(d)(2), Petitioner is entitled to one day of tolling for the time his motions for judicial review were pending, resulting in a deadline of December 28, 2004, for challenges to convictions entered in Case No. CF-2003-386B, and a deadline of April 21, 2005, for challenges to the conviction entered in Case No. CF-2003-540, as calculated under § 2244(d)(1)(A). See Wall v. Kholi, 562 U.S. 545 (2011).[8] However, Petitioner did not seek post-conviction relief in Case No. CF-2003-386B until July 7, 2006, or after expiration of the applicable one-year limitations periods.[9] In addition, all of Petitioner's efforts to obtain collateral relief in the state courts after revocation of his suspended sentences were filed long after expiration of the one-year

---

[8]In Wall, the Supreme Court held that a Rhode Island law, similar to Oklahoma's statute providing for "judicial review," Okla. Stat. tit. 22, § 982a, qualified as an application for "collateral review" within the meaning of § 2244(d)(2). Wall, 562 U.S. at 556. The Tenth Circuit Court of Appeals has found that, under the rationale of Wall, the pendency of a "properly filed" motion for judicial review tolled an Oklahoma prisoner's one year limitations period. Doby v. Dowling, 632 F. App'x 485, 488 (10th Cir. 2015) (unpublished).

[9]In that application, Petitioner alleged that (1) he received ineffective assistance of counsel, (2) his convictions on both Counts 1 and 2 violated the double jeopardy clause, and (3) the prosecution suppressed exculpatory evidence. See Dkt. # 11-9. The one year limitations period for those claims began to run under § 2244(d)(1)(A) when Petitioner's convictions became final.

13

limitations periods discussed above.[10]  A collateral petition filed in state court after the limitations period has expired no longer serves to toll the statute of limitations.  See Clark v. Oklahoma, 468 F.3d 711, 714 (10th Cir. 2006); Fisher v. Gibson, 262 F.3d 1135, 1142-43 (10th Cir. 2001). Because the one-year limitations periods had already expired, Petitioner's post-conviction applications and other collateral challenges to his convictions did not toll the limitations periods under 28 U.S.C. § 2244(d)(2).  Therefore, unless Petitioner demonstrates entitlement to equitable tolling, his petition filed on June 28, 2016, is time barred.

**D.  Equitable tolling**

The statute of limitations defined in 28 U.S.C. § 2244(d) is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645, 649 (2010); Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998).  Equitable tolling applies only in "rare and exceptional circumstances."  Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000) (citation omitted). A petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland, 560 U.S. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  A petitioner's burden in making this demonstration is a heavy one: a court will apply equitable tolling only if a petitioner is able to "show specific facts to support his claim of extraordinary circumstances and due diligence." Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (internal quotation marks and citation omitted).

---

[10]In his response to the motion to dismiss, Petitioner also alleges that he filed other "motions" in the state courts that serve to toll the limitations period and invites the Court to determine his entitlement to tolling by viewing the dockets for his cases at www.oscn.net.  See Dkt. # 16 at 5.  The Court is not required to scour the state court dockets in search of unidentified motions that might support Petitioner's tolling argument.

In his petition (Dkt. # 1), Petitioner claims his petition is not time-barred because he asserts "ACTUAL INNOCENCE, NEW INTERVENING CHANGE IN LAW, FUNDAMENTAL MISCARRIAGE OF JUSTICE . . . ." Id. at 28. Petitioner also makes conclusory allegations, including: that he has shown that "he was incompetent at the time of appeal," and that the provisions of § 2244 "cannot apply until Mr. Blevins's sentence is final." Id. In response to the motion to dismiss, Petitioner alleges that he has "continuing mental deficiencies," see Dkt. # 16 at 9, and that he "has shown a history of Psychological issues," id. at 12. For the reasons discussed below, the Court finds Petitioner is not entitled to equitable tolling.

### 1. Continuing "mental deficiencies"

"[E]quitable tolling because of mental illness is only warranted in circumstances such as adjudication of incompetence, institutionalization for mental incapacity, or evidence that the individual is not capable of pursuing [his] own claim because of mental incapacity." Rawlins v. Newton-Embry, 352 F. App'x 273, 276 (10th Cir. 2009) (unpublished)[11] (internal quotation marks and citations omitted). As stated above, Petitioner claims to have demonstrated a "history of psychological issues." (Dkt. # 16 at 12). However, the record demonstrates that at the time he entered his pleas, the state district judge made findings of fact that the pleas were "knowingly and voluntarily entered . . . [and] that Defendant is competent for the purposes of this hearing." See Dkt. # 11-19 at 12-13; Dkt. # 11-20 at 12. Petitioner fails to rebut those factual findings with clear and convincing evidence and they are, therefore, presumed correct. See 28 U.S.C. § 2254(e)(1). Furthermore, Petitioner presents no evidence demonstrating that he has been adjudicated

---

[11] This and all other unpublished opinions herein are not precedential but are cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

incompetent or has been institutionalized for his alleged mental illness. Also, the state court record in this case makes it abundantly clear that Petitioner has been able to file legal challenges to his convictions in the state courts. Therefore, the Court finds that Petitioner is not entitled to equitable tolling based on alleged "mental deficiencies."

### 2. Actual innocence

As noted above, Petitioner claims that he is actually innocent of the crimes of which he was convicted. See Dkt. # 1 at 28. A claim of actual innocence may in fact overcome the bar resulting from the one-year statute of limitations. See McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013); Lopez v. Trani, 628 F.3d 1228, 1231 (10th Cir. 2010) ("Where . . . a petitioner argues that he is entitled to equitable tolling because he is actually innocent, . . . the petitioner need make no showing of cause for the delay."); Laurson v. Leyba, 507 F.3d 1230, 1232 (10th Cir. 2007) ("A claim of actual innocence may toll the AEDPA statute of limitations."). The Tenth Circuit has "stress[ed] that this actual innocence exception is rare and will only be applied in the extraordinary case." Lopez, 628 F.3d at 1231 (internal quotation marks omitted). "Actual innocence" in this context refers to factual innocence and not mere legal sufficiency. Bousley v. U.S., 523 U.S. 614, 623-24 (1998).

To take advantage of the "actual innocence" gateway, a habeas petitioner must "present[ ] evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." Schlup v. Delo, 513 U.S. 298, 316 (1995). The petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Id. at 324. Moreover, this new evidence must be sufficient to "show that it is more likely than not that

no reasonable juror would have convicted [the petitioner] in light of the new evidence." Id. at 327; see also House v. Bell, 547 U.S. 518, 536-37 (2006).

Although Petitioner claims he is actually innocent, he provides no new reliable evidence suggesting that he is in fact innocent of the crimes to which he plead guilty and nolo contendere. Instead, Petitioner challenges the legal sufficiency of his convictions.[12] However, "actual innocence" refers to factual innocence and not mere legal sufficiency. Bousley, 523 U.S. at 623-24. Therefore, Petitioner's unsupported claim of actual innocence is insufficient to overcome the statute of limitations bar. See id.

## *CONCLUSION*

In the absence of equitable or statutory tolling, the petition for writ of habeas corpus is clearly time barred. Respondent's motion to dismiss shall be granted and the petition for writ of habeas corpus shall be dismissed with prejudice.

## Certificate of Appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a

---

[12] For example, in his abandoned Ground 11, see Dkt. # 1 at 23-24, Petitioner supports an "actual innocence" claim by alleging that, as to Case No. CF-2003-386B, the state court was deprived of subject matter jurisdiction due to double jeopardy violations and his incompetence. Id. at 23. As to Case No. CF-2003-540, Petitioner claims that the trial judge's introduction of personal testimony coupled with "extreme lawyer deception" resulted in "unlawful convictions." Id. at 23-24.

court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473 (2000) (citation omitted). In addition, when the Court's ruling is based on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Court's procedural ruling resulting in the dismissal of this petition as time barred is debatable. A certificate of appealability shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The Clerk of Court shall note the substitution of Jim Farris, Warden, in place of Arthur Lightle, Warden, as party respondent.

2. Petitioner's motion to supplement (Dkt. # 15) is **granted**.

3. Respondent's "motion to dismiss petition for habeas corpus for failure to timely file petition" (Dkt. # 10) is **granted**.

4. The petition for writ of habeas corpus (Dkt. # 1) is **dismissed with prejudice**.

5. A certificate of appealability is **denied**.

6. A separate Judgment shall be entered in this case.

**DATED** this 17th day of March, 2017.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT